O

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   S.A. THOMAS,                  )  Case No. CV 04-08448 DDP (SHx)
                                    )
12              Plaintiff,          )
                                    )
13        v.                        )
                                    )  **ORDER DECERTIFYING DAMAGES CLASS**
14   LEROY BACA, ~~MICHAEL~~        )
     ~~ANTONOVICH, YVONNE BURKE,~~  )
15   ~~DEANE DANA, DON KNABE,~~     )
     ~~GLORIA MOLINA, ZEV~~         )
16   ~~YAROSLAVSKY~~,               )  [Dkt. Nos. 825, 841, 842]
                                    )
17              Defendants.         )
     _____)

18

19        Presently before the court is Defendant's Motion to

20   Decertify Damages Class Action. Having considered the

21   submissions of the parties and heard oral argument, the court

22   grants the motion and adopts the following order.[1]

23   **I. Background**

24        On May 17, 2005, this court, pursuant to Federal Rule of

25   _____

26        [1]  Plaintiffs were unprepared to answer several of the court's
     questions regarding decertification at the motion hearing.  Solely
27   in the interest of resolving this issue on the merits, Plaintiffs'
     "Ex Parte Application for Order that the Court Consider on the
28   Pending Motion for Reconsideration Of Class Certification, The
     Substantive Short Memorandum That Addresses Points Raised by Oral
     Argument, by Analogy to F.R. App. P. Rule 28(j)" is granted.

Civil Procedure 23(b)(3), certified a damages class of individuals who, while in the custody of the Los Angeles Sheriff's Department ("LASD"), were required to sleep on the floor of an LASD facility with or without bedding. (Docket No. 98 at 12, 15.) The court refers to such individuals as "floor sleepers." Defendant now moves to decertify the damages class.

**II. Legal Standard**

An order regarding class certification is subject to alteration or amendment prior to final judgment. Fed. R. Civ. P. 23(c)(1)(c).  Such an order is, therefore, inherently tentative.  Coopers and Lybrand v. Livesay, 437 U.S. 463, 469 n.11 (1978).  Thus, this court is free to modify the certification order in light of subsequent developments in the litigation.  Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982). The court may decertify a class at any time. Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009).

**III. Discussion**

This court's 2005 certification order was based, in part, on the conclusion that a class action would be superior to any alternative, and that the difficulties managing the proposed class were not likely to be significant. (May 15 Order at 12.) Subsequent developments in the litigation, however, indicate that this is not the case, and that Defendant's concerns about the manageability of the class and superiority of a class action are justified.

As an initial matter, the court notes that Plaintiffs have not yet submitted a trial plan of any kind. See In Re Paxil

Litigation, 212 F.R.D. 539, 548 (C.D. Cal. 2003) (denying class
certification for lack of a workable trial plan); Lee v. ITT
Corp., 275 F.R.D. 318, 324 (W.D. Wash. 2011) (same).  Plaintiffs'
theory of damages has been difficult to ascertain.  Plaintiffs
represented to the court that they were waiving all claims for pain
and suffering (Transcript at 17:6-10) and expressed a desire to
explain in writing how they would present evidence of damages for
the constitutional violation alone. (Tr. at 18:5-12.)

Plaintiffs correctly state that a Plaintiff may recover on a
Section 1983 claim without a showing of actual damages.  Wilks v.
Reyes, 5 F.3d 412, 416 (9th Cir. 1993), citing Floyd v. Laws, 929
F.2d 1390, 1401 n.9, 1402 (9th Cir. 1991).  Absent a showing of
actual damages, however, a Plaintiff may recover only nominal
damages.  Id.  Plaintiffs here do not seek nominal damages. (Ex
Parte App. At 5:28.)  Instead, Plaintiffs previously indicated that
they sought damages only for the constitutional violation of forced
floor sleeping.  (Tr. at 18:5-12.)  As Plaintiff now appears to
acknowledge, however, they cannot recover damages based solely on
the abstract value of a constitutional right.  See Memphis Comm.
Schl. Dist. v. Stachura, 477 U.S. 299, 308 (1986); (Ex Parte. App.
at 5.)  Accordingly, and contrary to their earlier representation,
Plaintiffs now assert that they are seeking damages for pain and
suffering.  (Ex Parte. App. at 5.)    Plaintiffs' opposition to
the instant motion appears to suggest that trial of this case,
which Plaintiffs now acknowledge would require evidence of pain and
suffering, would be manageable because "no individualized class
member damages are sought" and "a standard per diem damages award
will be sought." (Opp. at 12.)  Plaintiffs propose that

"compensatory damages can be determined by arriving at a dollar value for a night of unconstitutional floor-sleeping, which can then be multiplied by the number of nights an inmate slept on the floor." (Opp. at 24.)[2]

Plaintiffs' suggestion rests on the mistaken assumption that each class member suffered a "standard" injury.  This is not the case. Though all floor sleepers suffered from the same constitutional violation, the damages at stake likely vary greatly. For example, a class member who slept on the floor of a clean cell, with bedding, is unlikely to be entitled to the same physical, mental, and emotional damages as one who slept without bedding on a wet, unsanitary floor at the mercy of vermin. Given the wide array of variables related to damages, the standardized, per diem approach Plaintiffs suggest would be inappropriate.

This case bears similarities to Pierce v. County of Orange, 526 F.3d 1190 (9th Cir. 2008). In Pierce, the district court initially certified a class of approximately 180,000 pre-trial detainees who alleged certain constitutional violations and violations of the Americans with Disabilities Act. Pierce, 526 F.3d at 1198, 1200. The district court later decertified the damages class due to the difficulty in ascertaining class membership and the highly individualized issues of damages proof. Id. at 1200.

---

[2] Plaintiffs suggested this approach before acknowledging that damages for the value of a constitutional right alone are not recoverable.  In that context, and in the absence of any subsequent trial management suggestions from Plaintiffs, the court understands Plaintiffs to be suggesting that a dollar value be found for one night's worth of pain and suffering resulting from unconstitutional floor sleeping.

1    Though the injuries at issue in this case all stem from the

2    violation of the same constitutional right, the other manageability

3    factors at issue in <u>Pierce</u> are even more problematic here. As noted

4    in <u>Pierce</u>, membership in a class comprised of county jail detainees

5    is "highly fluid and indefinite." <u>Pierce</u>, 526 F.3d at 1200.  Here,

6    the parties estimate that up to 200,000 people per year cycle

7    through Los Angeles County jails. Plaintiffs have suggested that

8    the plaintiff class here may include "only" one million people, and

9    at various times throughout these proceedings have indicated that

10   the class may exceed two million.[3]

11       Contrary to Plaintiffs' assertion that Defendant possesses

12   records of class membership, that does not appear to be the case.

13   Prior to this court's ruling on the unconstitutionality of forced

14   floor sleeping, Defendant was not required to, and did not,

15   maintain records of instances of floor sleeping. Pursuant to this

16   court's order, Defendant did subsequently keep records of instances

17   of floor sleeping during certain periods.  Those records, however,

18   only indicate the number of floor sleepers on a given night, and

19   not the identities of those floor sleepers.  The records therefore

20   cannot aid in the identification of class members.  Short of mailed

21   notification to every individual who cycled through the Los Angeles

22   County jail system during the class period, Plaintiffs have not

23   suggested any method of identifying or notifying members of the

24   class who actually slept on the floor.

25

26

_____

27       [3] Plaintiffs' estimate is apparently premised on the
     assumption that every jail inmate was required to sleep on the
28   floor.

The difficulty in identifying and notifying class members, a subset of a highly fluid population, also creates a significant likelihood that the verdict in this case would dwarf verified claims.  Plaintiffs' estimates of the potential verdict have varied wildly, and have reached up to $600 million.  Plaintiffs have not provided any viable suggestion as to how a large excess, potentially reaching into the hundreds of millions of dollars, could be disbursed.  Plaintiffs suggest, for example, that the court should "solve an enormous problem that the [Los Angeles County] Board of Supervisors never will address" by applying the cy pres doctrine to fund new construction of Los Angeles County jail facilities.  (Plaintiffs' Ex Parte App. at 7:18-24.)  To accept such an invitation, however, would give rise to serious separation of powers concerns.

In summary, it does not appear to the court that there is any feasible way to reliably identify or notify members of the class.  Even if class membership were ascertainable, the existence of highly individualized questions of proof as to damages would render a class action unmanageable.  Furthermore, the court has not been presented with any viable method of distributing any damage award excess, which would likely constitute the vast majority of the total award.  Under these circumstances, the damages class must be decertified.[4]

///

---

[4] The court's conclusion is based on factors specific to the circumstances of this case.  Nothing in this order should be read to suggest that a damages class action arising out of jail conditions is inherently unmanageable, inferior, or otherwise untenable.

**IV. Conclusion**

For the reasons stated above, Defendant's Motion to Decertify Damages Class is GRANTED.

IT IS SO ORDERED.

Dated: March 22, 2012

DEAN D. PREGERSON
United States District Judge