O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| S.A. THOMAS, | ) | Case No. CV 04-08448 DDP (SHx) |
| Plaintiff, | ) | |
| | ) | **ORDER RE: ATTORNEY'S FEES** |
| v. | ) | |
| | ) | |
| LEROY BACA, ~~MICHAEL~~ | ) | [Dkt. No. 1047] |
| ~~ANTONOVICH, YVONNE BURKE,~~ | ) | |
| ~~DEANE DANA, DON KNABE,~~ | ) | |
| ~~GLORIA MOLINA, ZEV~~ | ) | |
| ~~YAROSLAVSKY~~, | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the court is Plaintiffs' Motion for Attorneys' Fees.  Having considered the submissions of the parties, the court grants fees in the amount of $384,275 and adopts the following order.

**I.   Background**

Plaintiffs brought suit under 42 U.S.C. 1983 on behalf of a putative class comprised of individuals who, while incarcerated in Los Angeles County jail facilities, were required to sleep on the floor between December 2002 and May 2005.  Plaintiffs sought, and

initially obtained, certification of both a damages class and an injunctive relief class.  In November 2005, and in part as a result of this case, the parties in a related case, <u>Rutherford v. Block</u>, CV 75-4111 DDP, agreed to modify an existing injunction so as to require that every inmate receive a bunk and bedding.  (See Order, Nov. 18, 2005, Dkt. 237).

This case proceeded.  On September 21, 2007, this court granted Plaintiffs' Motion for Summary Adjudication, in part, concluding that (1) a custom of forced "floor sleeping" existed in the Los Angeles County Jail system, (2) the practice violates the Eight and Fourteenth Amendments to the Constitution, and (3) the County was deliberately indifferent to the violations.

The damages class portion of this case continued to be litigated, involving extensive motion practice regarding the appointment of lead class counsel and numerous settlement proceedings.  Though the parties reached a tentative settlement agreement in September 2010, the case ultimately did not settle.

Defendant then moved to decertify the damages class.  This court granted the motion, finding, among other things, that Plaintiffs had failed to develop any trial plan, had not put forth any viable method of ascertaining class membership, and had proposed a new theory of recovery that would require a showing of individualized damages.  Plaintiffs appeal of this court's decertification order to the Ninth Circuit was denied.

Plaintiffs proceeded to trial with their individual claims for damages.  Over Defendant's objections, the court instructed the jury that, consistent with the court's earlier summary judgment order, (1) floor sleeping violates the Eighth and Fourteenth

2

1  Amendments, (2) the County had a custom of requiring inmates to

2  sleep on the floor, and (3) County employees acted under the color

3  of law.  The only issues remaining for the jury, therefore, were

4  whether Plaintiffs were required to sleep on the floor and, if so,

5  what damages they suffered as a result.

6      After a three-day trial, the jury found that each Plaintiff

7  had been deprived of a bunk upon which to sleep, and awarded each

8  Plaintiff $10,000 in compensatory damages.  Plaintiffs now move for

9  approximately $7.09 million in attorneys' fees, plus out of pocket

10 costs.

11 **II.  Legal Standard**

12      Pursuant to 42 U.S.C. § 1988, a district court may, in its

13 discretion, award a reasonable attorney's fee to the prevailing

14 party in Section 1983 litigation.  42 U.S.C. § 1988(b).  Under

15 § 1988, "a prevailing plaintiff should ordinarily recover an

16 attorney's fee unless special circumstances would render such an

17 award unjust."  Hensley v. Eckerhart, 461 U.S. 424, 4429 (1983)

18 (internal quotation marks omitted).  A plaintiff "prevails" when

19 there is a material alteration of the legal relationship between

20 the parties that modifies the defendant's behavior in a way that

21 directly benefits the plaintiff.  See Farrar v. Hobby, 506 U.S.

22 103, 111-12 (1992).

23      The "starting point for determining the amount of a reasonable

24 fee is the number of hours reasonably expended on the litigation

25 multiplied by a reasonable hourly rate."  Hensley, 461 U.S. at 433.

26 Courts should exclude hours that were not reasonably expended from

27 the initial fee calculation.  Id. at 434.  There is a strong

28 presumption that the resulting "lodestar" figure represents a

3

reasonable fee.  <u>Jordan v. Multnomah County</u>, 815 F.2d 1258, 1262 (9th Cir. 1987).  After calculating the lodestar, other considerations "may lead the district court to adjust the fee upward or downward."  <u>Hensley</u>, 461 U.S. at 433.   Among those other considerations is "the important factor of the 'results obtained.'" <u>Id.</u>; <u>see also</u> <u>id.</u> at n.9 (suggesting that many factors are often subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate).

**III. Discussion**

A.   Compensation for Unsuccessful Claims

Plaintiffs here seek fees for every minute of attorney time expended throughout the entire course of this action.  Defendant protests, however, that Plaintiffs only prevailed only on a narrow subset of individual claims, and should not recover fees related to the larger, more complicated, and ultimately unsuccessful class action issues.

Attorney's fees are not necessarily limited to work performed on successful claims.  "A plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." <u>Cabrales v. County of Los Angeles</u>, 935 F.2d 1050, 1053 (9th Cir. 1991). <u>See also</u> <u>Hensley</u>, 461 U.S. at 435 ("A plaintiff who has won substantial relief should not have attorney's fee reduced simply because the district court did not adopt each contention raised."). The <u>Hensley</u> Court established a two part analysis for determining attorney's fees where plaintiff has prevailed on some claims but not others.  <u>See</u> <u>Hensley</u>, 461 U.S. at 434-35.  First, the court must decide whether the successful and unsuccessful claims are

related.   Though there is no "precise" test of relatedness, related claims involve "a common core of facts" or are "based on related legal theories."  Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986).  If the claims are unrelated, hours spent on unsuccessful, unrelated claims should be excluded in considering the amount of a reasonable fee. Hensley, 461 U.S. at 440.

Here, Plaintiffs' individual claims of forced floor sleeping clearly were based on the same core of facts, and premised upon the same legal theories, as those brought on behalf of the class.  The unsuccessful class claims were, therefore, related to the claims upon which Plaintiffs did succeed.  See O'Neal v. City of Seattle, 66 F.3d 1064, 1069 (9th Cir. 1995) (finding unsuccessful class claims sufficiently related to claims upon which summary judgment was granted in the named plaintiff's favor).

Having concluded that the successful and unsuccessful claims were related, this court must proceed to the second step of the Hensley analysis and evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. "If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive." Thorne, 802 F.2d at 1141 (9th Cir. 1986).[1]  Such is the case even if plaintiff's claims were "interrelated, nonfrivolous, and raised in good faith," as "Congress has not authorized an award of fees

---

[1] The term "full compensation" refers not to the amount sought as attorneys' fees, but rather to the lodestar product of reasonable hours at a reasonable rate.  See Hensley, 461 U.S. at 436.

whenever it was reasonable for a plaintiff to bring a lawsuit or whenever [a] conscientious counsel tried the case with devotion and skill." Hensley, 461 U.S. at 436.

This court, exercising its discretion, cannot conclude that Plaintiffs obtained "excellent" results relative to the number of hours expended on unsuccessful claims. Counsels' billing records include well over one thousand entries, but do not break those entries down by subject matter. Nevertheless, it appears that Plaintiffs' counsel expended well over six hundred hours on class-related matters.[2]

To some extent, this large number may be the result of excessive billing. Counsel, for example, billed fifteen minutes for review of this court's order setting a date for a conference with the court (Declaration of Marion Yagman at 25), 15 minutes for leaving a phone message for opposing counsel (Id. at 30), and four hours for attending a brief scheduling conference. (Id. at 26.) Even putting aside these somewhat minor excesses, however, Plaintiffs' relatively modest success in their straightforward individual action cannot justify hundreds of hours of attorney work on the related, but unsuccessful class claims.

To be sure, pursuit of those claims bore some fruit. Class-related discovery, for example, supported Plaintiffs' Monell claims

---

[2] This figure is a conservative estimate. Owing to a lack of clarity in the records submitted, it is difficult to determine the subject matter of several line items. By one count, up to 1073 hours, or 46.6% of the 2,288.25 hours sought by Marion Yagman, were related to class issues. Of the 2,316.05 hours sought by Stephen Yagman (putting aside distinctions between attorney and paralegal hours), 25.1% percent, or 581.75 hours, may be related to class claims. These figures include hours spent on appellate matters related to class certification.

1 on summary judgment.  Even in their individual action, however,
2 Plaintiffs were awarded significantly less in compensatory damages
3 than the amount they argued for.  Given the relief Plaintiffs
4 ultimately obtained, the court finds that fees for one hundred
5 hours of attorney effort, at the rates sought (discussed further,
6 below), adequately compensate Plaintiffs' counsel for their efforts
7 on related, but unsuccessful, class-action issues.

8     B.   Compensation for Successful Claims

9     Plaintiffs are entitled to reasonable fees related to their
10 successful claims.  As an initial matter, the court notes that this
11 case was hard fought, and that the docket in this case reflects
12 nearly two thousand entries.  Though the court does not fault any
13 participant for his or her zeal, many of these entries concern
14 disputes among Plaintiffs' own counsel, motions for contempt,
15 requests for sanctions, and other issues that did not bear directly
16 upon Plaintiffs' claims, and likely could have been resolved with
17 less expenditure of time and effort than was ultimately devoted to
18 them.  In determining the amount of time reasonably expended, the
19 court focuses primarily on the core proceedings in this case:
20 Plaintiffs' successful summary judgment motion and the trial
21 itself.

22     "[T]he fee applicant bears the burden of establishing
23 entitlement to an award and documenting the appropriate hours
24 expended . . . and should maintain billing time records in a manner
25 that will enable a reviewing court to identify distinct claims."
26 Hensley, 461 U.S. at 437.  As stated above, the billing records
27 provided to the court do not separate out or subtotal billed items
28 by subject area, and in many cases do not identify any subject

7

1    matter. (E.g., M. Yagman Decl. at 4("Read letter from Ben

2    Schonbrun.").

3         1.   Marion Yagman

4         Based on the court's own review, Marion Yagman billed 66.5

5    hours through 2007 for issues other than contempt and class

6    certification.  These items appear reasonable to the court.

7         Ms. Yagman billed, as best the court can determine, 527.75

8    hours related to trial.  This figure far exceeds that which

9    reasonably could have been billed.  In the end, the case that was

10   tried to the jury was fairly straightforward.  The jury was

11   directed that the court had already found floor sleeping to be

12   unconstitutional, that a custom or practice of floor sleeping

13   existed, and that County employees perpetuating that custom did so

14   under the color of law.  Plaintiffs only had to prove that they

15   had, in fact, been subjected to forced floor sleeping and show what

16   their damages were.  The evidentiary issues were not complex, and

17   the trial, including jury selection and deliberation, lasted only

18   three days.  Accordingly, up to 100 hours could reasonably have

19   been expended on trial-related matters.

20        2.   Stephen Yagman

21        The court has reviewed the billing records of Stephen Yagman,

22   many of which are hand-written and, as discussed above, do not

23   identify the subject matter to which they relate (E.g., "Conf

24   w/MRY" (passim); "Memo to Files" (Declaration of Stephen Yagman, p.

25   18:19).  The court's review indicates that Mr. Yagman spent 561.5

26   hours through December 16, 2007 on matters related to the

27   preparation and filing of the case, discovery (other than class

28

discovery), and motion practice, not including class certification, contempt, and sanctions issues.

Based on this court's knowledge of the facts of this case, including the factual circumstances, the legal issues presented, the scope and nature of discovery, and the nature of the briefing submitted, 561.5 hours is an unreasonable amount of time for a team of attorneys, let alone a single attorney, to have spent on these matters. The court finds that Mr. Yagman reasonably expended one hundred hours, and that the remainder is excessive.

Mr. Yagman billed 460.75, in his capacity as a paralegal, for trial and fee-related issues. Of those, 361.5 were directly related to trial. As discussed above, the trial was short, and did not present any complicated factual or evidentiary issues. Hours billed in excess of 100 are not warranted.

### 3.   Erwin Chemerinsky

Erwin Chemerinsky, one of this nation's most respected legal scholars, billed 29 hours related to summary judgment issues. Of those, however, between 14 and 22 hours involved travel time. Furthermore, it is not entirely clear why Mr. Chemerinsky's efforts were necessary in light of the more involved participation of two other highly experienced attorneys. Accordingly, the court will award fees for 14.5 hours of Mr. Chemerinsky's time.

### 4.   Gary Bostwick

Gary Bostwick first worked on this case a few weeks prior to the start of trial. He seeks $34,200 for 45.6 hours of his services. These items strike the court as duplicative of other efforts and excessive. The court therefore awards fees for 15.2 hours.

1         5.   Maxwell Blecher and Victor Sherman

2        Plaintiffs seek fees for 29.6 hours of Maxwell Blecher's time

3    and 7.75 hours of Victor Sherman's time.  Mr. Sherman appears to

4    have played no substantive role in this matter, while Mr. Blecher's

5    time appears to have been spent entirely on disputes between

6    Plaintiffs' various counsel.  The court awards no fees for these

7    efforts.

8        C.   Applicable Rates

9        All attorneys in this matter seek a rate of $750 per hour for

10   their work on this case.  Plaintiffs have adequately shown that

11   $750 per hour is in line with the rates charged for similar

12   services by attorneys in this district of comparable skill,

13   experience, and reputation.  See Chaudhry v. City of Los Angeles,

14   751 F.3d 1096, 1110-11 (9th Cir. 2014).  Though Defendants oppose

15   the application of current rates to work performed as early as

16   2004, this court may apply historical rates in consideration of the

17   delay in payment.  See Missouri v. Jenkins, 491 U.S. 274, 283-84

18   (1989);  Penn. v. Delaware Valley Citizens' Council for Clean Air

19   ("Delaware II"), 483 U.S. 711, 716 (1987).

20       Notably, however, Stephen Yagman seeks $750 per hour for his

21   time expended both as an attorney and as a paralegal.  While this

22   court finds that rate appropriate to Mr. Yagman's work as a lawyer,

23   Plaintiffs' motion cites no authority, nor is the court aware of

24   any, to support the proposition that a paralegal, regardless of the

25   quality of the paralegal work performed, is entitled to the same

26   rate as an attorney.  The court is not aware of any evidence that

27   any paralegal in the history of the profession has ever been

28   compensated at $750 per hour, let alone that such is the prevailing

rate for paralegal work within the Central District of California. Plaintiffs have not put forth any other applicable rate for paralegal services.  It appears to the court, however, that the prevailing rate is $125 per hour.  See Aarons v. BMW of North America, LLC, No. CV 11-7667 PSG, 2014 WL 4090564 at *16 (C.D. Cal. Apr. 29, 2014).

> D.   Compensation for Efforts to End Floor Sleeping

In the earlier stages of this case, this court explicitly stated that the County's agreement to end its floor-sleeping practices going forward was, in part, a result of Plaintiffs efforts in this action.  (Dkt. No. 237).  It is well established that settlement agreements enforced through consent decrees materially alter the legal relationship between the parties, and therefore may support an award of attorney's fees.  See Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources, 532 U.S. 598, 604 (2001).  Though some courts have held that serving as a "catalyst," speeding up a party's compliance with an injunction, is not compensable, the Ninth Circuit has rejected such an approach.  See Balla v. Idaho, 677 F.3d 910, 916 (2012).  Here, Plaintiffs actions did not merely speed up or ensure compliance with a pre-existing order, but rather led to a new change in the relationship of the parties, as reflected in the modification to the Rutherford injunction along the lines of the injunctive relief Plaintiffs initially sought in this case. Accordingly, the court awards a further 100 attorney hours at the current rate, or $75,000, for Plaintiffs' success in preventing further floor sleeping.

**IV. Conclusion**

1    For the reasons stated above, Plaintiffs' Motion for Attorney

2  Fees is GRANTED, in part.[3]  The court awards 100 attorney hours at

3  the current rate, or $75,000, for counsel's efforts regarding

4  Plaintiffs related, but ultimately unsuccessful class action

5  claims.  The court finds that Marion Yagman reasonably expended

6  166.5 hours on this case at a reasonable rate of $750 per hour, and

7  awards $124,875.00.  The court finds that Stephen Yagman reasonably

8  expended 100 hours on this case as an attorney and 100 hours as a

9  paralegal.  Applying respective rates of $750 per hour and $125 per

10 hour to that work, the court awards $87,500.  The court awards

11 $11,400 for Mr. Bostwick's efforts and $10,875.00 for Mr.

12 Chemerinsky's efforts.  As compensation for counsels' efforts in

13 bringing about the termination of Defendant's impermissible floor

14 sleeping practices, the court awards Plaintiffs a further $75,000,

15 for a total of $384,275.[4]

16 IT IS SO ORDERED.

17 Dated: December 19, 2014

                                              DEAN D.  PREGERSON
18                                            United States District Judge

---

21    [3] Plaintiffs' separate motion for out of pocket costs will be
22 addressed by separate order of this court.

23    [4] The court declines Plaintiffs' invitation to apply a
   positive multiplier and Defendant's request to apply a negative
24 multiplier.  Lodestar calculations generally subsume the relevant
   factors.  See Weeks v. Kellogg Co., No. CV 09-8102 (MMM), 2013 WL
25 6531177 at *34 n. 157 (C.D. Cal. Nov. 23, 2013); see also Lema v.
   Comfort Inn Merced, No. 1:10-cv-01131-SMS, 2014 WL 1577042 at *12
26 (E.D. Cal. Apr. 17, 2014) (citing City of Burlington v. Daque, 505
   U.S. 557, 566 (1992) ("Federal law does not permit enhancement of
27 fees for contingency risk in actions brought under fee-shifting
   statutes . . . ."); cf. Vizcaino v. Microsoft Corp., 290 F.3d 1043,
28 1051 (9th Cir. 2002) ("The bar against risk multipliers in
   statutory fee cases does not apply to common fund cases.").

12